IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| BUNKER HILL TECHNOLOGIES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> NISSAN MOTOR CO., LTD., <br><br> Defendant. | CIVIL ACTION NO. 2:26-cv-230 <br><br><br> **JURY TRIAL DEMANDED** |

## PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Bunker Hill Technologies, LLC files this Complaint against Defendant Nissan Motor Co., Ltd. ("Nissan") for infringement of U.S. Patent No. 8,030,884 ("the '884 Patent"), U.S. Patent No. 8,487,582 ("the '582 Patent"), U.S. Patent No. 9,809,121 ("the '121 Patent"), U.S. Patent No. 9,914,365 ("the '365 Patent"), U.S. Patent No. 9,975,439 ("the '439 Patent"), and  U.S. Patent No. 10,604,023 ("the '023 Patent"),  (collectively, the "Asserted Patents").

## THE PARTIES

1. Plaintiff Bunker Hill Technologies, LLC ("BHT") is a Texas limited liability company located in Allen, Texas.

2. Defendant Nissan Motor Co., Ltd. is a corporation organized and existing under the laws of Japan with a principal place of business at 1-1 Takashima 1-chome, Nishi-ku, Yokohama, Kanagawa 220-8686, Japan. On information and belief, Nissan does business itself, and through its subsidiaries, affiliates, and agents, in the State of Texas and the Eastern District of Texas. On information and belief, Nissan, directly or through its wholly owned subsidiaries, is responsible for research and development, manufacturing, sales, offers for sale, marketing, importation, and

1

distribution of automotive vehicles from Nissan-managed brands (e.g., Nissan and Infiniti) in the United States, including this District.

3.     Nissan conducts business in Texas and in the Eastern District of Texas, directly or through intermediaries, including subsidiaries, distributors, affiliates, retailers, suppliers, integrators, customers, and others.

4.     Nissan is engaged in making, using, selling, offering for sale, and/or importing vehicles having electric or hybrid-electric powertrain systems ("Accused Products")[1] to and throughout the United States, including this District. Nissan also induces its subsidiaries, distributors, affiliates, retailers, suppliers, integrators, and customers in the making, using, selling, offering for sale, and/or importing such products to and throughout the United States, including this District. To this end, Nissan and its foreign and U.S.-based subsidiaries—which act together as part of Nissan's global network of sales and manufacturing emissaries—have operated as agents of, and for, one another and have otherwise acted vicariously for Nissan as elements of the same business group and/or enterprise. Indeed, they work in concert and in orchestrated fashion, subject to agreements that are far nearer than arm's length, in order implement a distribution channel of infringing products within this District and the United States.

5.     Nissan maintains a substantial corporate presence in the United States via at least its U.S.-based subsidiaries.

6.     Alone and through at least the activities of its U.S.-based subsidiaries, Nissan conducts business in the United States and this District, including importing, making, distributing,

---

[1] The Accused Products include each Nissan- or Infiniti-branded vehicle having electric or hybrid-electric powertrain systems. Specific models referenced herein are examples of such vehicles. Accused Products include, but are not limited to, the 2023-25 Nissan Ariya, 2018-26 Nissan Leaf, and 2026 Nissan Rogue.

and selling Accused Products that infringe the Asserted Patents. *See Trois v. Apple Tree Auction Center, Inc.*, 882 F.3d 485, 490 (5th Cir. 2018) ("A defendant may be subject to personal jurisdiction because of the activities of its agent within the forum state*....");* *see also Cephalon, Inc. v. Watson Pharmaceuticals, Inc.*, 629 F. Supp. 2d 338, 348 (D. Del. 2009) ("The agency theory may be applied not only to parents and subsidiaries, but also to companies that are 'two arms of the same business group,' operate in concert with each other, and enter into agreements with each other that are nearer than arm's length.").

7.    Through importation, manufacture, offers to sell, sales, distributions, and related agreements to transfer ownership of Nissan's products with distributors and customers operating in and maintaining significant business presences in the United States, Nissan does extensive business in the United States, this State, and this District.

## JURISDICTION AND VENUE

8.    This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq.*, including, without limitation, 35 U.S.C. §§ 271, 281, 284, and 285. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9.    This Court has specific and general personal jurisdiction over Nissan consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute because, among other things, Nissan has engaged in continuous, systematic, and substantial business in Texas and has committed and continues to commit, directly or through intermediaries (including subsidiaries, agents, distributors, affiliates, retailers, suppliers, integrators, customers, and others), acts of patent infringement in this State and this District. Such acts of infringement include making, using, testing, offering for sale, selling, and/or importing Accused Products (as more particularly identified and described throughout this Complaint) in this

State and this District and/or inducing others to commit acts of patent infringement in this State and District. Indeed, Nissan has purposefully and voluntarily placed, and are continuing to place, one or more Accused Products into the stream of commerce through established distribution channels (including the Internet) with the expectation and intent that such products will be sold to and purchased by consumers in the United States, this State, and this District; and with the knowledge and expectation that such products (whether in standalone form or as integrated in downstream products) will be imported into the United States, this State, and this District.

10.    In addition, Nissan has derived substantial revenues from their infringing acts occurring within this State and this District. Nissan has substantial business in this State and this District, including (i) at least part of its infringing activities alleged herein and (ii) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported, and services provided to Texas residents vicariously through and/or in concert with its agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers.

11.    In addition, Nissan, directly or through its wholly owned subsidiaries, has knowingly induced, and continues to knowingly induce, infringements within this State and this District by advertising, marketing, offering for sale and/or selling Accused Products (as more particularly identified and described throughout this Complaint) that incorporate the fundamental technologies covered by the Asserted Patents. Such advertising, marketing, offering for sale and/or selling of Accused Products is directed to consumers, customers, manufacturers, integrators, suppliers, distributors, resellers, partners, and/or end users, and this includes providing instructions, user manuals, advertising, and/or marketing materials that facilitate, direct and encourage use of infringing functionality with Nissan's knowledge thereof.

12.     Nissan has, in the multitude of ways described above, availed itself of the benefits and privileges of conducting business in this State and willingly subjected itself to the exercise of this Court's personal jurisdiction over them. Nissan also has sufficient minimum contacts with this forum through their transaction of substantial business in this State and this District and their commission of acts of patent infringement as alleged in this Complaint that are purposefully directed towards this State and District.

13.     Venue is proper in this District under 28 U.S.C. § 1391 because, among other things, Nissan is a foreign corporation and thus may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3).

**THE ASSERTED PATENTS AND TECHNOLOGY**

14.     BHT is the sole and exclusive owner of all right, title, and interest in the Asserted Patents and holds the exclusive right to take all actions necessary to enforce its rights in, and to, the Asserted Patents, including the filing of this patent infringement lawsuit. Indeed, BHT owns all substantial rights in the Asserted Patents, including the right to exclude others and to recover damages for all past, present, and future infringements.

15.     The '884 Patent is entitled, "Apparatus for transferring energy using onboard power electronics and method of manufacturing same." The '884 Patent lawfully issued on October 4, 2011 and stems from U.S. Patent Application No. 12/550,504, which was filed on August 31, 2009.

16.     The '582 Patent is entitled, "Apparatus for transferring energy using onboard power electronics and method of manufacturing same." The '582 Patent lawfully issued on July 16, 2013 and stems from U.S. Patent Application No. 13/099,053, which was filed on May 2, 2011.

17.    The '121 Patent is entitled, "Apparatus for energy transfer using converter and method of manufacturing same." The '121 Patent lawfully issued on November 7, 2017 and stems from U.S. Patent Application No. 15/343,493, which was filed on November 4, 2016.

18.    The '365 Patent is entitled, "Apparatus and method for rapid charging using shared power electronics." The '365 Patent lawfully issued on March 13, 2018 and stems from U.S. Patent Application No. 15/265,404, which was filed on September 14, 2016.

19.    The '439 Patent is entitled, "Apparatus for energy transfer using converter and method of manufacturing same." The '439 Patent lawfully issued on May 22, 2018 and stems from U.S. Patent Application No. 15/697,948, which was filed on September 7, 2017.

20.    The '023 Patent is entitled, "Apparatus for energy transfer using converter and method of manufacturing same." The '023 Patent lawfully issued on March 31, 2020 and stems from U.S. Patent Application No. 15/945,168, which was filed on April 4, 2018.

21.    The claims of the Asserted Patents are directed to patent-eligible subject matter under 35 U.S.C. § 101. They are not directed to an abstract idea, and the technologies covered by the claims comprise systems and/or ordered combinations of features and functions that, at the time of invention, were not, alone or in combination, well-understood, routine, or conventional.

### DEFENDANTS' PRE-SUIT KNOWLEDGE OF ITS INFRINGEMENT

22.    Prior to filing this Complaint, Nissan was put on notice of its infringements of the Asserted Patents by way of communication with BHT's licensing agent regarding a potential license to BHT assets as early as March 3, 2025.

23.    During ongoing discussions regarding a potential license, BHT's licensing agent sent an email on July 21, 2025 to Nissan personnel, including Sho Tanaka, notifying Nissan of claim charts in the data room previously made available to Nissan, including claim charts for the '884 Patent, the '582 Patent, the '121 Patent, the '439 Patent, and the '023 Patent that demonstrated

Nissan's infringement and identified specific infringing Nissan products. Sho Tanaka on behalf of Nissan responded on August 4, 2025 indicating that a review of BHT's provided materials was in progress.

24.     On November 13, 2025, BHT's licensing agent further sent via email to Nissan a claim chart for the '365 Patent identifying Nissan infringing products and demonstrating Nissan's infringement of the '365 Patent.

25.     The accused products addressed in the Counts below include, but are not limited to, products identified in BHT's communications to Nissan. Nissan's past and continuing sales of the accused products (i) willfully infringe the Asserted Patents, and (ii) impermissibly usurp the significant benefits of BHT's patented technologies without fair compensation.

26.     To the extent necessary, BHT has complied with the requirements of 35 U.S.C. § 287, such that BHT may recover pre-suit damages.

## COUNT I
### (INFRINGEMENT OF U.S. PATENT NO. 8,030,884)

27.     BHT incorporates the preceding paragraphs herein by reference.

28.     This cause of action arises under the patent laws of the United States, and, in particular, 35 U.S.C. §§ 271, *et seq*.

29.     BHT is the owner of all substantial rights, title, and interest in and to the '884 Patent, including the right to exclude others and to enforce, sue, and recover damages for past, present, and future infringements.

30.     The '884 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office on October 4, 2011, after full and fair examination.

***Direct Infringement (35 U.S.C. § 271(a))***

31.     Nissan directly infringes one or more claims of the '884 Patent in this District and elsewhere in Texas and the United States.

32.     Nissan directly infringes, either by itself or via its agent(s), at least claim 20 of the '884 Patent as set forth under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, and/or importing Nissan and Infiniti branded electric vehicles equipped that incorporate the fundamental technologies covered by the '884 Patent, including, but not limited to, Nissan and Infiniti branded vehicles (e.g., the 2026 Nissan Leaf) equipped with electric and/or hybrid-electric powertrain systems (collectively, "the '884 Accused Products").

33.     By way of illustration only, Nissan's '884 Accused Products comprise each and every element of claim 20 of the '884 Patent. The '884 Accused Products comprise "[a] system comprising: a charge bus configured to receive charging energy from a voltage source." For example, the '884 Accused Products are vehicles that include high voltage wire harnesses (i.e., a charge bus) configured to receive energy from a charger (i.e., a voltage source) via a charging port.



Source: https://www.nissanusa.com/vehicles/electric-cars/leaf.html



1. On Board Charger (OBC)
2. High voltage junction box
3. PTC cabin heater
4. Service plug
5. DC/AC inverter
6. DC/DC converter
7. Traction motor/Inverter/Reducer

8. Air conditioner compressor
9. High-voltage wire harnesses (colored orange)
10. Li-ion battery
11. PTC battery heater



6. Power windows (P.250)
7. Side turn signal light* (P.222)
8. Rear door handle (P.262)
9. Front view camera (P.298)
10. Sonar sensors*
   – Sonar system (P.470)
11. Headlights and turn signal lights (P.216)
12. Tires
   – Wheels and tires (P.529, P.561)
   – Emergency tire puncture repair kit (P.486)
   – Tire Pressure Monitoring System (TPMS) (P.165, P.333)
13. Outside mirrors (P.290)
14. Side view camera (P.298)
15. Doors
   – Keys (P.260)
   – Door locks (P.262)
   – Intelligent Key system (P.267)
   – Security system (P.210)
*: if so equipped

1. Hood (P.279)
2. Windshield wiper and washer
   – Switch operation (P.212)
   – Window washer fluid (P.521)
   – Windshield wiper deicer* (P.215)
3. Front camera (P.219, P.368, P.372, P.377, P.391, P.409, P.429)

4. Charge port lid (J1772 Normal charge) (P.285)
   – Immediate charge switch (P.74)
   – Charge connector unlock switch (P.66)
5. Dimming Panoramic Roof with heat shielding* (P.254)

9



Source: https://www.nissan-techinfo.com/refgh0v/og/Leaf/2026-Nissan-LEAF.pdf



Source: https://ieeexplore.ieee.org/document/10215092

34.    The '884 Accused Products comprise a system comprising "an energy storage device configured to output a DC voltage and coupled to the charge bus." For example, the '884 Accused Products include a high voltage battery (i.e., an energy storage device) configured to output a DC voltage and is coupled to the high voltage wire harnesses (i.e., charge bus).

10



1. On Board Charger (OBC)
2. High voltage junction box
3. PTC cabin heater
4. Service plug
5. DC/AC inverter
6. DC/DC converter
7. Traction motor/Inverter/Reducer
8. Air conditioner compressor
9. High-voltage wire harnesses (colored orange)
10. Li-ion battery
11. PTC battery heater

NORMAL-WBSA0021X

**Energy Storage Device**

**Charge Bus**

Source: https://www.nissan-techinfo.com/refgh0v/og/Leaf/2026-Nissan-LEAF.pdf

11



Source: https://ieeexplore.ieee.org/document/10215092

35.    The '884 Accused Products comprise a system comprising "a first bi-directional voltage modification assembly coupled to the charge bus." For example, the '884 Accused Products include a bi-directional DC/DC converter (i.e., a first bi-directional voltage modification assembly) coupled to the high voltage cables (i.e., charge bus).

12



Source: https://www.nissan-techinfo.com/refgh0v/og/Leaf/2026-Nissan-LEAF.pdf



Source: https://ieeexplore.ieee.org/document/10215092

36. The '884 Accused Products comprise a system comprising "a controller configured to: monitor a transfer of the charging energy supplied to the energy storage device; compare the monitored transfer of charging energy with a threshold comprising one of a voltage of the energy storage device and an average rectified line voltage of the charge bus; and after the threshold has been crossed, control the first bi-directional voltage modification assembly to modify one of a voltage and a current of the charging energy supplied to the first energy storage device." For example, the '884 Accused Products include a battery controller (i.e., a controller) which monitors the transfer of energy to the battery. For example, when the battery reaches full charge (i.e., the voltage of the battery reaches a threshold value indicating a full charge), the controller causes the bi-directional voltage modification assembly to modify the voltage and current supplied to the battery to zero to stop charging the battery and prevent overcharging the battery. For example,

during charging, the controller causes the bi-directional voltage modification assembly to modify

the voltage of the charging energy by increasing the voltage incrementally as the battery's voltage

reaches incremental thresholds (e.g., battery at 300V will be charged at 302V; battery at 302V will

be charged at 304V, etc.).

> **Even when charging the Li-ion battery using a charger capable of more than the vehicle's maximum charging power, the maximum power from the charger will be limited to the vehicle's maximum charging power, it will be changed based on the vehicle status.**
>
> **During charging the power limit to the vehicle may change depending on the capacity of the Li-ion battery.** This is normal and does not indicate a malfunction.

> **CHARGE LIMIT**
>
> The charge limit stops the vehicle from charging when it reaches the desired value. This limit affects AC and DC charging.
>
> See "Electric Vehicle screen" (P.36) to display this screen.
>
> Touch the point Ⓐ and drag it to the desired charge limit (40% to 100%).
>
> The charge limit can also be set by the vehicle information display. See "EV Settings" (P.177).

Source: https://www.nissan-techinfo.com/refgh0v/og/Leaf/2026-Nissan-LEAF.pdf

***Indirect Infringement (Inducement – 35 U.S.C. § 271(b))***

37.     In addition and/or in the alternative to the direct infringements, Nissan indirectly infringes one or more claims of the '884 Patent by knowingly and intentionally inducing others, including its customers and/or other end users, to directly infringe the '884 Patent (e.g., by charging or otherwise using '884 Accused Products).

38.     At a minimum, Nissan has had knowledge of the '884 Patent at least since service of this Complaint. Nissan also has knowledge of the '884 Patent since receiving detailed correspondence from BHT prior to the filing of the Complaint, alerting Nissan to its infringements. Since receiving notice of its infringements, Nissan has actively induced, and continues to actively induce, the direct infringements of its customers and/or other end users (e.g., as illustrated above) as set forth under U.S.C. § 271(b). Such inducements have been committed with the knowledge, or with willful blindness to the fact, that the acts induced constitute infringement of the '884 Patent. Indeed, Nissan has intended to cause, continues to intend to cause, and has taken, and continues to take, affirmative steps to induce infringement by, among other things, creating and disseminating advertisements and instructive materials that promote the infringing use of the Accused Products, including marketing materials, user manuals (e.g., those available via https://www.nissanusa.com/owners/manuals-guides.html and https://www.nissan-techinfo.com/home.aspx), and online instructional materials (e.g., those available via https://www.youtube.com/user/nissanusa) that specifically teach and encourage customers and other end users to use the '884 Accused Products in an infringing manner, including by providing instructions on how to charge '884 Accused Products. By providing such instructions and support, Nissan knows (and has known), or should know (and should have known), that its actions have actively induced, and continue to actively induce, infringement of the '884 Patent.

***Damages***

16

39.     BHT has been damaged as a result of Nissan's infringing conduct described in this Count. Nissan is, thus, liable to BHT in an amount that adequately compensates it for Nissan's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

40.     Despite having knowledge of the '884 Patent and knowledge that it directly and/or indirectly infringes one or more claims of the '884 Patent, Nissan has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Nissan's infringing activities relative to the '884 Patent have, thus, been, and continue to be, willful, wanton, and deliberate in disregard of BHT's rights with respect to the '884 Patent, justifying enhanced damages under 35 U.S.C. § 284.

## **COUNT II**
### (INFRINGEMENT OF U.S. PATENT NO. 8,487,582)

41.     BHT incorporates the preceding paragraphs herein by reference.

42.     This cause of action arises under the patent laws of the United States, and, in particular, 35 U.S.C. §§ 271, *et seq*.

43.     BHT is the owner of all substantial rights, title, and interest in and to the '582 Patent, including the right to exclude others and to enforce, sue, and recover damages for past, present, and future infringements.

44.     The '582 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office on July 16, 2013, after full and fair examination.

***Direct Infringement (35 U.S.C. § 271(a))***

45.     Nissan directly infringes one or more claims of the '582 Patent in this District and elsewhere in Texas and the United States.

17

46.     Nissan directly infringes, either by itself or via its agent(s), at least claim 1 of the '582 Patent as set forth under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, and/or importing Nissan and Infiniti branded electric vehicles equipped that incorporate the fundamental technologies covered by the '582 Patent, including, but not limited to, Nissan and Infiniti branded vehicles (e.g., the 2026 Nissan Leaf) equipped with electric and/or hybrid-electric powertrain systems (collectively, "the '582 Accused Products").

47.     By way of illustration only, Nissan's '582 Accused Products comprise each and every element of claim 1 of the '582 Patent. The '582 Accused Products comprise "[a]n apparatus comprising: an energy storage device configured to output a DC voltage." For example, the '582 Accused Products are vehicles that include a high voltage battery (i.e., an energy storage device) which outputs DC voltage.



Source: https://www.nissanusa.com/vehicles/electric-cars/leaf.html

18



1. On Board Charger (OBC)
2. High voltage junction box
3. PTC cabin heater
4. Service plug
5. DC/AC inverter
6. DC/DC converter
7. Traction motor/Inverter/Reducer

8. Air conditioner compressor
9. High-voltage wire harnesses (colored orange)
10. Li-ion battery
11. PTC battery heater

Energy Storage Device



Source: https://www.nissan-techinfo.com/refgh0v/og/Leaf/2026-Nissan-LEAF.pdf

19



Source: https://ieeexplore.ieee.org/document/10215092

48.     The '582 Accused Products comprise an apparatus comprising "a bi-directional voltage modification assembly coupled to the energy storage device." For example, the '582 Accused Products include a bi-directional voltage modification assembly (i.e., DC/DC converter) coupled to the high voltage battery (i.e., energy storage device).

20



Source: https://www.nissan-techinfo.com/refgh0v/og/Leaf/2026-Nissan-LEAF.pdf



Source: https://ieeexplore.ieee.org/document/10215092

49.     The '582 Accused Products comprise an apparatus comprising "a charge bus coupled to the energy storage device and to the bi-directional voltage modification assembly, the charge bus coupleable to a high-impedance voltage source." For example, the '582 Accused Products include a charge bus coupled to the high-voltage battery and the bi-directional voltage modification assembly. The voltage source is a standard 120-volt, 15-amp electrical outlet, while the high-voltage battery system uses 400 volts with as low as 8 amps. Accordingly, the voltage source is high-impedance.

22



1. On Board Charger (OBC)
2. High voltage junction box
3. PTC cabin heater
4. Service plug
5. DC/AC inverter
6. DC/DC converter
7. Traction motor/Inverter/Reducer
8. Air conditioner compressor
9. High-voltage wire harnesses (colored orange)
10. Li-ion battery
11. PTC battery heater

**Bi-directional Voltage Modification Assembly**

**Energy Storage Device**

**Charge Bus**



| Type of charging | Charge port | Charge connector | Control box | Power | Instructions |
|---|---|---|---|---|---|
| AC Level 1: Trickle charge (AC 110–120 volt) | | Normal charge connector | Domestic plug | Electrical outlet | Use the L1&L2-EVSE. Use only a 110–120 volt, 15 amp, dedicated outlet installed by a qualified electrician. |

23

## AMPERAGE LIMIT

This function is used to limit the normal charging amperage, to prevent a charging outage when using a home outlet or unfamiliar normal charger.

See "Electric Vehicle screen" (P.36) to display this screen.

Touch the "Amperage Limit" key Ⓐ.

Select desired amperage (8, 12, 16, 24 or Max).

## ⚠ WARNING

- **The EV (Electric Vehicle) system uses high voltage approximately DC 400 volt. The system can be**

Source: https://www.nissan-techinfo.com/refgh0v/og/Leaf/2026-Nissan-LEAF.pdf



Source: https://ieeexplore.ieee.org/document/10215092

50.     The '582 Accused Products comprise an apparatus comprising "a controller configured to: monitor a transfer of charging energy supplied from the high-impedance voltage source to the energy storage device; and modify one of a voltage and a current of the charging energy supplied to the energy storage device based on the monitored transfer of charging energy." For example, the '582 Accused Products include a controller, which monitors the transfer of energy to the battery. When the battery reaches its charge limit, for example, the controller causes the bi-directional voltage modification assembly to modify the voltage and current supplied to the battery to zero to stop charging the battery. Additionally, during charging, for example, the controller causes the bi-directional voltage modification assembly to modify the voltage of the charging energy by increasing the voltage incrementally as the battery's voltage reaches incremental thresholds (e.g., battery at 300V will be charged at 302V; battery at 302V will be charged at 304V, etc.).

25

> Even when charging the Li-ion battery using a charger capable of more than the vehicle's maximum charging power, the maximum power from the charger will be limited to the vehicle's maximum charging power, it will be changed based on the vehicle status.
>
> During charging the power limit to the vehicle may change depending on the capacity of the Li-ion battery. This is normal and does not indicate a mal-function.

> CHARGE LIMIT
> The charge limit stops the vehicle from charging when it reaches the desired value. This limit affects AC and DC charging.
>
> See "Electric Vehicle screen" (P.36) to display this screen.
>
> Touch the point Ⓐ and drag it to the desired charge limit (40% to 100%).
>
> The charge limit can also be set by the vehicle information display. See "EV Settings" (P.177).

Source: https://www.nissan-techinfo.com/refgh0v/og/Leaf/2026-Nissan-LEAF.pdf

*Indirect Infringement (Inducement – 35 U.S.C. § 271(b))*

51.     In addition and/or in the alternative to the direct infringements, Nissan indirectly infringes one or more claims of the '582 Patent by knowingly and intentionally inducing others, including its customers and/or other end users, to directly infringe the '582 Patent (e.g., by charging or otherwise using '582 Accused Products).

26

52.     At a minimum, Nissan has had knowledge of the '582 Patent at least since service of this Complaint. Nissan also has knowledge of the '582 Patent since receiving detailed correspondence from BHT prior to the filing of the Complaint, alerting Nissan to its infringements. Since receiving notice of its infringements, Nissan has actively induced, and continues to actively induce, the direct infringements of its customers and/or other end users (e.g., as illustrated above) as set forth under U.S.C. § 271(b). Such inducements have been committed with the knowledge, or with willful blindness to the fact, that the acts induced constitute infringement of the '582 Patent. Indeed, Nissan has intended to cause, continues to intend to cause, and has taken, and continues to take, affirmative steps to induce infringement by, among other things, creating and disseminating advertisements and instructive materials that promote the infringing use of the Accused Products, including marketing materials, user manuals (e.g., those available via https://www.nissanusa.com/owners/manuals-guides.html and https://www.nissan-techinfo.com/home.aspx), and online instructional materials (e.g., those available via https://www.youtube.com/user/nissanusa) that specifically teach and encourage customers and other end users to use the '582 Accused Products in an infringing manner, including by providing instructions on how to charge '582 Accused Products. By providing such instructions and support, Nissan knows (and has known), or should know (and should have known), that its actions have actively induced, and continue to actively induce, infringement of the '582 Patent.

**Damages**

53.     BHT has been damaged as a result of Nissan's infringing conduct described in this Count. Nissan is, thus, liable to BHT in an amount that adequately compensates it for Nissan's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

27

54.     Despite having knowledge of the '582 Patent and knowledge that it directly and/or indirectly infringes one or more claims of the '582 Patent, Nissan has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Nissan's infringing activities relative to the '582 Patent have, thus, been, and continue to be, willful, wanton, and deliberate in disregard of BHT's rights with respect to the '582 Patent, justifying enhanced damages under 35 U.S.C. § 284.

## COUNT III
(INFRINGEMENT OF U.S. PATENT NO. 9,809,121)

55.     BHT incorporates the preceding paragraphs herein by reference.

56.     This cause of action arises under the patent laws of the United States, and, in particular, 35 U.S.C. §§ 271, *et seq*.

57.     BHT is the owner of all substantial rights, title, and interest in and to the '121 Patent, including the right to exclude others and to enforce, sue, and recover damages for past, present, and future infringements.

58.     The '121 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office on November 7, 2017, after full and fair examination.

***Direct Infringement (35 U.S.C. § 271(a))***

59.     Nissan directly infringes one or more claims of the '121 Patent in this District and elsewhere in Texas and the United States.

60.     Nissan directly infringes, either by itself or via its agent(s), at least claim 7 of the '121 Patent as set forth under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, and/or importing Nissan and Infiniti branded electric vehicles equipped that incorporate the fundamental technologies covered by the '121 Patent, including, but not limited to, Nissan and Infiniti branded

28

vehicles (e.g., the 2026 Nissan Leaf) equipped with electric and/or hybrid-electric powertrain systems (collectively, "the '121 Accused Products").

61.     By way of illustration only, Nissan's '121 Accused Products comprise each and every element of claim 7 of the '121 Patent. The '121 Accused Products comprise "[a] vehicle comprising: an energy storage device." For example, the '121 Accused Products are vehicles that include a high voltage battery (i.e., an energy storage device).



Source: https://www.nissanusa.com/vehicles/electric-cars/leaf.html



1. On Board Charger (OBC)
2. High voltage junction box
3. PTC cabin heater
4. Service plug
5. DC/AC inverter
6. DC/DC converter
7. Traction motor/Inverter/Reducer

8. Air conditioner compressor
9. High-voltage wire harnesses (colored orange)
10. Li-ion battery
11. PTC battery heater

Energy Storage Device

This vehicle uses two types of batteries. One is the 12-volt battery that is the same as the battery in vehicles powered by gasoline engine, the other is the Li-ion battery (high voltage).

Source: https://www.nissan-techinfo.com/refgh0v/og/Leaf/2026-Nissan-LEAF.pdf



Source: https://www.nissanusa.com/vehicles/electric-cars/leaf/features.html

62.    The '121 Accused Products comprise a vehicle comprising "a connection system coupleable to an external charging source and configured to utilize a first connection and a second connection." For example, the '121 Accused Products include a connection system coupleable to an external charging source and configured to use a first connection (e.g., a DC charging input) and a second connection (e.g., an AC charging input).

Ⓐ Normal charge
Ⓑ DC Fast Charge
When opening the charge port cap, push the tab and open the cap Ⓐ or Ⓑ.



Normal charge

NORMAL-WBDA0014X

DC Fast Charge

NORMAL-WBDA0018X

**AC Level 2: Normal charge**

NISSAN recommends using normal charging for usual charging of the vehicle. Use of DC Fast Charge should be minimized in order to help prolong Li-ion battery life.

Normal charging uses L1 & L2 EVSE (Electric Vehicle Supply Equipment), or an SAE J1772 compliant charging device connected to a dedicated AC 220 - 240 volt circuit. L1 & L2 EVSE is provided with the vehicle (if so equipped). The charging device is a home charging dock installed in your home by a qualified electrician. It is recommended that you visit a NISSAN certified LEAF dealer. For additional infor-

**DC Level 3: DC Fast Charge**

A vehicle equipped with a DC Fast Charge port is compatible with the NACS (J3400) connectors on charging stations. Charging stations are UL certified and safe to use in the US.

Source: https://www.nissan-techinfo.com/refgh0v/og/Leaf/2026-Nissan-LEAF.pdf

63.    The '121 Accused Products comprise a vehicle comprising "connection system configured to: provide an input voltage to charge the energy storage device at a first charging rate when the energy storage device is coupled to the first connection; and provide an input voltage to charge the energy storage device at a second charging rate when the energy storage device is coupled to the second connection." For example, the '121 Accused Products utilize an AC or DC charging subsystem couplable to the high voltage battery each of which has its own input voltage and charging rate to charge the high voltage battery.

34

**Electric Vehicles**

**Usage/Net Battery Capacity (kWh)**

75

**Charge Time @ 240v — Hours** [*]

6.5

**Battery Range Distance — Miles**

303

**Peak DC Fast Charge Time (minutes)**

35

Source: https://www.nissanusa.com/vehicles/electric-cars/leaf/specs-trims.html



Source: https://www.nissanusa.com/vehicles/going-electric-ev/range-charging.html

64.    The '121 Accused Products comprise a vehicle comprising "a plurality of DC converters coupleable to the connection system, the plurality of DC converters configured to: boost the input voltage to an intermediate voltage via a first DC converter; and buck the intermediate voltage to an output voltage via a second DC converter, the output voltage for charging the energy storage device." For example, the '121 Accused Products utilize a plurality of DC converters coupleable to the connection system, including a boost DC converter in the AC Charging Subsystem to boost/increase the second input voltage to a higher intermediate voltage and a buck DC converter to buck/decrease the intermediate voltage for charging the high voltage battery.



Source: https://ieeexplore.ieee.org/document/10215092

### Architecture of an Onboard Charger

An onboard charger is comprised of several stages to convert the AC power to DC power.

The first stage is the one-phase to three-phase power factor correction (PFC) stage, which converts the AC voltage from the grid into an intermediate DC voltage between 400V and 800V, depending on the vehicle battery's voltage (note that battery voltages have been increasing to allow for higher efficiency, faster charging times, and lighter cabling within a vehicle). Though the PFC architecture can range from one phase to three phases, three phases has become more popular as power levels increase.

The second stage is the isolated DC/DC stage that converts the intermediate DC voltage to the target voltage. The target voltage is specific to the battery being charged, and it can vary between 200V and 800V, depending on whether a PHEV or BEV is being charged. For the DC/DC stage, it is common to use LLC and phase-shift, full-bridge converter topologies.

Source: https://www.monolithicpower.com/learning/resources/designing-onboard-chargers-for-high-performance-and-power-density

***Indirect Infringement (Inducement – 35 U.S.C. § 271(b))***

65.    In addition and/or in the alternative to the direct infringements, Nissan indirectly infringes one or more claims of the '121 Patent by knowingly and intentionally inducing others,

including its customers and/or other end users, to directly infringe the '121 Patent (e.g., by charging or otherwise using '121 Accused Products).

66.     At a minimum, Nissan has had knowledge of the '121 Patent at least since service of this Complaint. Nissan also has knowledge of the '121 Patent since receiving detailed correspondence from BHT prior to the filing of the Complaint, alerting Nissan to its infringements. Since receiving notice of its infringements, Nissan has actively induced, and continues to actively induce, the direct infringements of its customers and/or other end users (e.g., as illustrated above) as set forth under U.S.C. § 271(b). Such inducements have been committed with the knowledge, or with willful blindness to the fact, that the acts induced constitute infringement of the '121 Patent. Indeed, Nissan has intended to cause, continues to intend to cause, and has taken, and continues to take, affirmative steps to induce infringement by, among other things, creating and disseminating advertisements and instructive materials that promote the infringing use of the Accused Products, including marketing materials, user manuals (e.g., those available via https://www.nissanusa.com/owners/manuals-guides.html and https://www.nissan-techinfo.com/home.aspx), and online instructional materials (e.g., those available via https://www.youtube.com/user/nissanusa) that specifically teach and encourage customers and other end users to use the '121 Accused Products in an infringing manner, including by providing instructions on how to charge '121 Accused Products. By providing such instructions and support, Nissan knows (and has known), or should know (and should have known), that its actions have actively induced, and continue to actively induce, infringement of the '121 Patent.

***Damages***

67.     BHT has been damaged as a result of Nissan's infringing conduct described in this Count. Nissan is, thus, liable to BHT in an amount that adequately compensates it for Nissan's

37

infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

68.    Despite having knowledge of the '121 Patent and knowledge that it directly and/or indirectly infringes one or more claims of the '121 Patent, Nissan has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Nissan's infringing activities relative to the '121 Patent have, thus, been, and continue to be, willful, wanton, and deliberate in disregard of BHT's rights with respect to the '121 Patent, justifying enhanced damages under 35 U.S.C. § 284.

## <u>COUNT IV</u>
### (INFRINGEMENT OF U.S. PATENT NO. 9,914,365)

69.    BHT incorporates the preceding paragraphs herein by reference.

70.    This cause of action arises under the patent laws of the United States, and, in particular, 35 U.S.C. §§ 271, *et seq*.

71.    BHT is the owner of all substantial rights, title, and interest in and to the '365 Patent, including the right to exclude others and to enforce, sue, and recover damages for past, present, and future infringements.

72.    The '365 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office on March 13, 2018, after full and fair examination.

*Direct Infringement (35 U.S.C. § 271(a))*

73.    Nissan directly infringes one or more claims of the '365 Patent in this District and elsewhere in Texas and the United States.

74.    Nissan directly infringes, either by itself or via its agent(s), at least claim 1 of the '365 Patent as set forth under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, and/or importing Nissan and Infiniti branded electric vehicles equipped that incorporate the fundamental

technologies covered by the '365 Patent, including, but not limited to, Nissan and Infiniti branded vehicles (e.g., the 2026 Nissan Leaf) equipped with electric and/or hybrid-electric powertrain systems with DC Fast Charging capabilities (collectively, "the '365 Accused Products").

75.    By way of illustration only, Nissan's '365 Accused Products comprise each and every element of claim 1 of the '365 Patent. The '365 Accused Products comprise "[a] vehicle charging system comprising: an energy storage device." For example, the '365 Accused Products have a vehicle charging system that includes a high voltage battery (i.e., an energy storage device).



Source: https://www.nissanusa.com/vehicles/electric-cars/leaf.html



1.  On Board Charger (OBC)
2.  High voltage junction box
3.  PTC cabin heater
4.  Service plug
5.  DC/AC inverter
6.  DC/DC converter
7.  Traction motor/Inverter/Reducer
8.  Air conditioner compressor
9.  High-voltage wire harnesses (colored orange)
10. Li-ion battery
11. PTC battery heater

> This vehicle uses two types of batteries. One is the 12-volt battery that is the same as the battery in vehicles powered by gasoline engine, the other is the Li-ion battery (high voltage).

Source: https://www.nissan-techinfo.com/refgh0v/og/Leaf/2026-Nissan-LEAF.pdf

76.    The '365 Accused Products comprise a vehicle charging system comprising "a connection system coupleable to an external charging source and configured to utilize a DC connection and an AC connection, the connection system configured to: provide a first input voltage to charge the energy storage device at a first charging rate when the energy storage device is coupled to the DC connection; and provide a second input voltage to charge the energy storage device at a second charging rate when the energy storage device is coupled to the AC connection." For example, the '365 Accused Products includes a connection system coupleable to an external charging source and configured to use a DC charging input (i.e., a DC connection) and an AC

charging input (i.e., an AC connection). The connection system is configured to provide an input voltage to charge the high voltage battery at a first charging rate when the DC charging input is coupled to the high voltage battery and provides an input voltage to charge the high voltage battery at a second charging rate when the AC charging input is coupled to the high voltage battery.



Source: https://www.nissan-techinfo.com/refgh0v/og/Leaf/2026-Nissan-LEAF.pdf

## HOW LONG DOES IT TAKE TO CHARGE THE 2026 NISSAN LEAF?

Charging times depend on the voltage of the power source:

- **DC Fast Charging (150 kW):** 10 percent to 80 percent in approximately 35 minutes.
- **Level 2 Home Charging (240V):** 0 percent to 100 percent in roughly 7.5 hours using the 11 kW on-board charger.
- **Level 1 Home Charging (120V):** Adds approximately 3–5 miles of range per hour (emergency use only).

Source: https://www.fortworthnissan.com/research-2026-nissan-leaf-faqs.html



Source: https://ieeexplore.ieee.org/document/10215092

77.   The '365 Accused Products comprise a vehicle charging system comprising "an AC/DC converter coupleable to the AC connection." For example, the '365 Accused Products include an AC/DC converter (e.g., a rectifier) coupleable to the AC connection.



1. On Board Charger (OBC)
2. High voltage junction box
3. PTC cabin heater
4. Service plug
5. DC/AC inverter
6. DC/DC converter
7. Traction motor/Inverter/Reducer
8. Air conditioner compressor
9. High-voltage wire harnesses (colored orange)
10. Li-ion battery
11. PTC battery heater

Source: https://www.nissan-techinfo.com/refgh0v/og/Leaf/2026-Nissan-LEAF.pdf

### Architecture of an Onboard Charger

An onboard charger is comprised of several stages to convert the AC power to DC power.

The first stage is the one-phase to three-phase power factor correction (PFC) stage, which converts the AC voltage from the grid into an intermediate DC voltage between 400V and 800V, depending on the vehicle battery's voltage (note that battery voltages have been increasing to allow for higher efficiency, faster charging times, and lighter cabling within a vehicle). Though the PFC architecture can range from one phase to three phases, three phases has become more popular as power levels increase.

The second stage is the isolated DC/DC stage that converts the intermediate DC voltage to the target voltage. The target voltage is specific to the battery being charged, and it can vary between 200V and 800V, depending on whether a PHEV or BEV is being charged. For the DC/DC stage, it is common to use LLC and phase-shift, full-bridge converter topologies.

Source: https://www.monolithicpower.com/learning/resources/designing-onboard-chargers-for-high-performance-and-power-density



Source: https://ieeexplore.ieee.org/document/10215092

78.    The '365 Accused Products comprise a vehicle charging system comprising "a plurality of DC converters coupleable to the AC/DC converter and the DC connection, the plurality of DC converters configured to: boost the first or second input voltage to an intermediate voltage via a first DC converter; and buck the intermediate voltage to an output voltage via a second DC converter, the output voltage for charging the energy storage device." For example, the '365 Accused Products utilize a plurality of DC converters coupleable to the AC/DC converter and the DC connection via the high voltage DC bus. These DC converters include a boost DC converter in the AC Charging Subsystem to boost/increase the second input voltage to a higher intermediate voltage and a buck DC converter to buck/decrease the intermediate voltage for charging the high-voltage battery.



Source: https://www.nissan-techinfo.com/refgh0v/og/Leaf/2026-Nissan-LEAF.pdf



Source: https://ieeexplore.ieee.org/document/10215092

**Architecture of an Onboard Charger**

An onboard charger is comprised of several stages to convert the AC power to DC power.

The first stage is the one-phase to three-phase power factor correction (PFC) stage, which converts the AC voltage from the grid into an intermediate DC voltage between 400V and 800V, depending on the vehicle battery's voltage (note that battery voltages have been increasing to allow for higher efficiency, faster charging times, and lighter cabling within a vehicle). Though the PFC architecture can range from one phase to three phases, three phases has become more popular as power levels increase.

The second stage is the isolated DC/DC stage that converts the intermediate DC voltage to the target voltage. The target voltage is specific to the battery being charged, and it can vary between 200V and 800V, depending on whether a PHEV or BEV is being charged. For the DC/DC stage, it is common to use LLC and phase-shift, full-bridge converter topologies.

Source: https://www.monolithicpower.com/learning/resources/designing-onboard-chargers-for-high-performance-and-power-density

***Indirect Infringement (Inducement – 35 U.S.C. § 271(b))***

79.     In addition and/or in the alternative to the direct infringements, Nissan indirectly infringes one or more claims of the '365 Patent by knowingly and intentionally inducing others, including its customers and/or other end users, to directly infringe the '365 Patent (e.g., by charging or otherwise using '365 Accused Products).

80.     At a minimum, Nissan has had knowledge of the '365 Patent at least since service of this Complaint. Nissan also has knowledge of the '365 Patent since receiving detailed correspondence from BHT prior to the filing of the Complaint, alerting Nissan to its infringements. Since receiving notice of its infringements, Nissan has actively induced, and continues to actively induce, the direct infringements of its customers and/or other end users (e.g., as illustrated above) as set forth under U.S.C. § 271(b). Such inducements have been committed with the knowledge, or with willful blindness to the fact, that the acts induced constitute infringement of the '365 Patent. Indeed, Nissan has intended to cause, continues to intend to cause, and has taken, and continues to take, affirmative steps to induce infringement by, among other things, creating and disseminating advertisements and instructive materials that promote the infringing use of the Accused Products, including marketing materials, user manuals (e.g., those available via https://www.toyota.com/owners/warranty-owners-manuals/), and online instructional materials

46

(e.g., those available via https://www.youtube.com/toyotausa) that specifically teach and encourage customers and other end users to use the '365 Accused Products in an infringing manner, including by providing instructions on how to charge '365 Accused Products. By providing such instructions and support, Nissan knows (and has known), or should know (and should have known), that its actions have actively induced, and continue to actively induce, infringement of the '365 Patent.

***Damages***

81.    BHT has been damaged as a result of Nissan's infringing conduct described in this Count. Nissan is, thus, liable to BHT in an amount that adequately compensates it for Nissan's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

82.    Despite having knowledge of the '365 Patent and knowledge that it directly and/or indirectly infringes one or more claims of the '365 Patent, Nissan has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Nissan's infringing activities relative to the '365 Patent have, thus, been, and continue to be, willful, wanton, and deliberate in disregard of BHT's rights with respect to the '365 Patent, justifying enhanced damages under 35 U.S.C. § 284.

## COUNT V
(INFRINGEMENT OF U.S. PATENT NO. 9,975,439)

83.    BHT incorporates the preceding paragraphs herein by reference.

84.    This cause of action arises under the patent laws of the United States, and, in particular, 35 U.S.C. §§ 271, *et seq*.

85. BHT is the owner of all substantial rights, title, and interest in and to the '439 Patent, including the right to exclude others and to enforce, sue, and recover damages for past, present, and future infringements.

86. The '439 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office on May 22, 2018, after full and fair examination.

### *Direct Infringement (35 U.S.C. § 271(a))*

87. Nissan directly infringes one or more claims of the '439 Patent in this District and elsewhere in Texas and the United States.

88. Nissan directly infringes, either by itself or via its agent(s), at least claim 1 of the '439 Patent as set forth under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, and/or importing Nissan and Infiniti branded electric vehicles equipped that incorporate the fundamental technologies covered by the '439 Patent, including, but not limited to, Nissan and Infiniti branded vehicles (e.g., the 2026 Nissan Leaf) equipped with electric and/or hybrid-electric powertrain systems (collectively, "the '439 Accused Products").

89. By way of illustration only, Nissan's '439 Accused Products comprise each and every element of claim 1 of the '439 Patent. The '439 Accused Products comprise "[a] vehicle comprising: an energy storage device." For example, the '439 Accused Products are vehicles that include a high voltage battery (i.e., an energy storage device).



Source: https://www.nissanusa.com/vehicles/electric-cars/leaf.html



1. On Board Charger (OBC)
2. High voltage junction box
3. PTC cabin heater
4. Service plug
5. DC/AC inverter
6. DC/DC converter
7. Traction motor/Inverter/Reducer
8. Air conditioner compressor
9. High-voltage wire harnesses (colored orange)
10. Li-ion battery
11. PTC battery heater

Energy Storage Device

This vehicle uses two types of batteries. One is the 12-volt battery that is the same as the battery in vehicles powered by gasoline engine, the other is the Li-ion battery (high voltage).

Source: https://www.nissan-techinfo.com/refgh0v/og/Leaf/2026-Nissan-LEAF.pdf



Source: https://www.nissanusa.com/vehicles/electric-cars/leaf/features.html

90.    The '439 Accused Products comprise a vehicle comprising "a first voltage converter coupleable to the energy storage device." For example, the '439 Accused Products include a voltage converter coupleable to the high voltage battery.



Source: https://www.nissan-techinfo.com/refgh0v/og/Leaf/2026-Nissan-LEAF.pdf

91. The '439 Accused Products comprise a vehicle comprising "a traction drive coupleable to the first voltage converter, the traction drive comprising an inverter coupled to a traction motor." For example, the '439 Accused Products include a traction drive coupleable to the first voltage converter, the traction drive comprising an inverter coupled to a traction motor.



Source: https://www.nissan-techinfo.com/refgh0v/og/Leaf/2026-Nissan-LEAF.pdf

92. The '439 Accused Products comprise a vehicle comprising "a charging system on-board the vehicle and coupleable to the energy storage device." For example, the '439 Accused Products utilize an AC or DC charging system that is on-board and coupleable to the high voltage battery.



Source: https://www.nissan-techinfo.com/refgh0v/og/Leaf/2026-Nissan-LEAF.pdf

93.    The '439 Accused Products comprise a vehicle comprising a charging system comprising "a receptacle coupleable to an external charging source; a second voltage converter configured to boost an input voltage derived from the external charging source to an intermediate voltage; and a third voltage converter configured to buck the intermediate voltage to an output voltage to charge the energy storage device." For example, the charging system of the '439 Accused Products has a receptacle coupleable to an external charging source, a second voltage converter in the AC Charging Subsystem to boost an input voltage, and a third voltage converter in the AC Charging Subsystem to buck the voltage for charging the high voltage battery.



Ⓐ Normal charge
Ⓑ DC Fast Charge
When opening the charge port cap, push the tab and open the cap Ⓐ or Ⓑ.



Normal charge



**DC Fast Charge**

# TYPES OF CHARGE AND HOW TO CHARGE THE LI-ION BATTERY





54

| Type of charging | Charge port | Charge connector | Control box | Power | Instructions |
|---|---|---|---|---|---|
| DC Level 3: Quick Charge ONLY Not compatible with NACS Level 1/2 charging. | | Quick charge connector | | | Public charging stations |

NORMAL-WBTA0028X

Source: https://www.nissan-techinfo.com/refgh0v/og/Leaf/2026-Nissan-LEAF.pdf

**Architecture of an Onboard Charger**

An onboard charger is comprised of several stages to convert the AC power to DC power.

The first stage is the one-phase to three-phase power factor correction (PFC) stage, which converts the AC voltage from the grid into an intermediate DC voltage between 400V and 800V, depending on the vehicle battery's voltage (note that battery voltages have been increasing to allow for higher efficiency, faster charging times, and lighter cabling within a vehicle). Though the PFC architecture can range from one phase to three phases, three phases has become more popular as power levels increase.

The second stage is the isolated DC/DC stage that converts the intermediate DC voltage to the target voltage. The target voltage is specific to the battery being charged, and it can vary between 200V and 800V, depending on whether a PHEV or BEV is being charged. For the DC/DC stage, it is common to use LLC and phase-shift, full-bridge converter topologies.

Source: https://www.monolithicpower.com/learning/resources/designing-onboard-chargers-for-high-performance-and-power-density

***Indirect Infringement (Inducement – 35 U.S.C. § 271(b))***

94.     In addition and/or in the alternative to the direct infringements, Nissan indirectly infringes one or more claims of the '439 Patent by knowingly and intentionally inducing others, including its customers and/or other end users, to directly infringe the '439 Patent (e.g., by charging or otherwise using '439 Accused Products).

95.     At a minimum, Nissan has had knowledge of the '439 Patent at least since service of this Complaint. Nissan also has knowledge of the '439 Patent since receiving detailed correspondence from BHT prior to the filing of the Complaint, alerting Nissan to its infringements. Since receiving notice of its infringements, Nissan has actively induced, and continues to actively induce, the direct infringements of its customers and/or other end users (e.g., as illustrated above) as set forth under U.S.C. § 271(b). Such inducements have been committed with the knowledge,

55

or with willful blindness to the fact, that the acts induced constitute infringement of the '439 Patent. Indeed, Nissan has intended to cause, continues to intend to cause, and has taken, and continues to take, affirmative steps to induce infringement by, among other things, creating and disseminating advertisements and instructive materials that promote the infringing use of the Accused Products, including marketing materials, user manuals (e.g., those available via https://www.nissanusa.com/owners/manuals-guides.html and https://www.nissan-techinfo.com/home.aspx), and online instructional materials (e.g., those available via https://www.youtube.com/user/nissanusa) that specifically teach and encourage customers and other end users to use the '439 Accused Products in an infringing manner, including by providing instructions on how to charge '439 Accused Products. By providing such instructions and support, Nissan knows (and has known), or should know (and should have known), that its actions have actively induced, and continue to actively induce, infringement of the '439 Patent.

**Damages**

96.    BHT has been damaged as a result of Nissan's infringing conduct described in this Count. Nissan is, thus, liable to BHT in an amount that adequately compensates it for Nissan's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

97.    Despite having knowledge of the '439 Patent and knowledge that it directly and/or indirectly infringes one or more claims of the '439 Patent, Nissan has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Nissan's infringing activities relative to the '439 Patent have, thus, been, and continue to be, willful, wanton, and deliberate in disregard of BHT's rights with respect to the '439 Patent, justifying enhanced damages under 35 U.S.C. § 284.

## COUNT VI

### (INFRINGEMENT OF U.S. PATENT NO 10,604,023)

98. BHT incorporates the preceding paragraphs herein by reference.

99. This cause of action arises under the patent laws of the United States, and, in particular, 35 U.S.C. §§ 271, *et seq*.

100. BHT is the owner of all substantial rights, title, and interest in and to the '023 Patent, including the right to exclude others and to enforce, sue, and recover damages for past, present, and future infringements.

101. The '023 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office on March 31, 2020, after full and fair examination.

### *Direct Infringement (35 U.S.C. § 271(a))*

102. Nissan directly infringes one or more claims of the '023 Patent in this District and elsewhere in Texas and the United States.

103. Nissan directly infringes, either by itself or via its agent(s), at least claim 1 of the '023 Patent as set forth under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, and/or importing Nissan and Infiniti branded electric vehicles equipped that incorporate the fundamental technologies covered by the '023 Patent, including, but not limited to, Nissan and Infiniti branded vehicles (e.g., the 2026 Nissan Leaf) equipped with electric and/or hybrid-electric powertrain systems (collectively, "the '023 Accused Products").

104. By way of illustration only, Nissan's '023 Accused Products comprise each and every element of claim 1 of the '023 Patent. The '023 Accused Products comprise "[a] vehicle comprising: an energy storage device." For example, the '023 Accused Products are vehicles that include a high voltage battery (i.e., an energy storage device).

57



Source: https://www.nissanusa.com/vehicles/electric-cars/leaf.html



1. On Board Charger (OBC)
2. High voltage junction box
3. PTC cabin heater
4. Service plug
5. DC/AC inverter
6. DC/DC converter
7. Traction motor/Inverter/Reducer
8. Air conditioner compressor
9. High-voltage wire harnesses (colored orange)
10. Li-ion battery
11. PTC battery heater

**Energy Storage Device**

This vehicle uses two types of batteries. One is the 12-volt battery that is the same as the battery in vehicles powered by gasoline engine, the other is the Li-ion battery (high voltage).

Source: https://www.nissan-techinfo.com/refgh0v/og/Leaf/2026-Nissan-LEAF.pdf



Source: https://www.nissanusa.com/vehicles/electric-cars/leaf/features.html

105.   The '023 Accused Products comprise a vehicle comprising "a first voltage converter coupleable to the energy storage device via a first switching device." For example, the '023 Accused Products include a voltage converter coupleable to the high voltage battery via a contactor (i.e., a first switching device).



Source: https://www.nissan-techinfo.com/refgh0v/og/Leaf/2026-Nissan-LEAF.pdf

106.   The '023 Accused Products comprise a vehicle comprising "a traction drive coupled to the first voltage converter, the traction drive comprising an inverter coupled to a traction motor." For example, the '023 Accused Products include a traction drive coupled to the first voltage converter, the traction drive comprising an inverter coupled to a traction motor.



1. On Board Charger (OBC)
2. High voltage junction box
3. PTC cabin heater
4. Service plug
5. DC/AC inverter
6. DC/DC converter
7. Traction motor/Inverter/Reducer
8. Air conditioner compressor
9. High-voltage wire harnesses (colored orange)
10. Li-ion battery
11. PTC battery heater

Source: https://www.nissan-techinfo.com/refgh0v/og/Leaf/2026-Nissan-LEAF.pdf

107.    The '023 Accused Products comprise a vehicle comprising "a charging system on-board the vehicle and coupleable to the energy storage device via a second switching device." For example, the '023 Accused Products utilize an AC or DC charging system that is on-board and coupleable to the high voltage battery via a second switching contactor (e.g., DC charging contactor or relay) which connects or disconnects the charging system.



| | |
|---|---|
| 1. On Board Charger (OBC) | 8. Air conditioner compressor |
| 2. High voltage junction box | 9. High-voltage wire harnesses (colored orange) |
| 3. PTC cabin heater | |
| 4. Service plug | 10. Li-ion battery |
| 5. DC/AC inverter | 11. PTC battery heater |
| 6. DC/DC converter | |
| 7. Traction motor/inverter/Reducer | |

Source: https://www.nissan-techinfo.com/refgh0v/og/Leaf/2026-Nissan-LEAF.pdf

108. The '023 Accused Products comprise a vehicle comprising a charging system comprising "a receptacle configured to mate with an external charging source; a second voltage converter configured to boost an input voltage derived from the external charging source to an intermediate voltage; and a third voltage converter configured to buck the intermediate voltage to an output voltage to charge the energy storage device." For example, the charging system of the '023 Accused Products has a receptacle configured to mate with an external charging source, a second voltage converter in the AC Charging Subsystem to boost an input voltage, and a third voltage converter in the AC Charging Subsystem to buck the voltage for charging the high voltage battery.





Ⓐ Normal charge
Ⓑ DC Fast Charge
When opening the charge port cap, push the tab and open the cap Ⓐ or Ⓑ.

NORMAL-WBDA0014X

Normal charge



**DC Fast Charge**

# TYPES OF CHARGE AND HOW TO CHARGE THE LI-ION BATTERY



| Type of charging | Charge port | Charge connector | Control box | Power | Instructions |
|---|---|---|---|---|---|
| AC Level 1: Trickle charge (AC 110–120 volt) | | Normal charge connector | | Domestic plug / Electrical outlet | Use the L1&L2-EVSE. Use only a 110-120 volt, 15 amp, dedicated outlet installed by a qualified electrician. |

NORMAL-WBTA0033X



| Type of charging | Charge port | Charge connector | Control box | Power | Instructions |
|---|---|---|---|---|---|
| AC Level 2: Normal charge (AC 220–240 volt) | | Normal charge connector | | | Use the charging device (AC 220-240 volt) that is installed in your home. |
| | | Normal charge connector | | Domestic plug / Electrical outlet | Use the L1 & L2 EVSE. Use only a 220-240 volt, 50 amp, dedicated outlet installed by a qualified electrician. |

NORMAL-WBTA0002X

64



Source: https://www.nissan-techinfo.com/refgh0v/og/Leaf/2026-Nissan-LEAF.pdf

### Architecture of an Onboard Charger

An onboard charger is comprised of several stages to convert the AC power to DC power.

The first stage is the one-phase to three-phase power factor correction (PFC) stage, which converts the AC voltage from the grid into an intermediate DC voltage between 400V and 800V, depending on the vehicle battery's voltage (note that battery voltages have been increasing to allow for higher efficiency, faster charging times, and lighter cabling within a vehicle). Though the PFC architecture can range from one phase to three phases, three phases has become more popular as power levels increase.

The second stage is the isolated DC/DC stage that converts the intermediate DC voltage to the target voltage. The target voltage is specific to the battery being charged, and it can vary between 200V and 800V, depending on whether a PHEV or BEV is being charged. For the DC/DC stage, it is common to use LLC and phase-shift, full-bridge converter topologies.

Source: https://www.monolithicpower.com/learning/resources/designing-onboard-chargers-for-high-performance-and-power-density

***Indirect Infringement (Inducement – 35 U.S.C. § 271(b))***

109.    In addition and/or in the alternative to the direct infringements, Nissan indirectly infringes one or more claims of the '023 Patent by knowingly and intentionally inducing others, including its customers and/or other end users, to directly infringe the '023 Patent (e.g., by charging or otherwise using '023 Accused Products).

110.    At a minimum, Nissan has had knowledge of the '023 Patent at least since service of this Complaint. Nissan also has knowledge of the '023 Patent since receiving detailed correspondence from BHT prior to the filing of the Complaint, alerting Nissan to its infringements. Since receiving notice of its infringements, Nissan has actively induced, and continues to actively induce, the direct infringements of its customers and/or other end users (e.g., as illustrated above) as set forth under U.S.C. § 271(b). Such inducements have been committed with the knowledge,

or with willful blindness to the fact, that the acts induced constitute infringement of the '023 Patent. Indeed, Nissan has intended to cause, continues to intend to cause, and has taken, and continues to take, affirmative steps to induce infringement by, among other things, creating and disseminating advertisements and instructive materials that promote the infringing use of the Accused Products, including marketing materials, user manuals (e.g., those available via https://www.nissanusa.com/owners/manuals-guides.html and https://www.nissan-techinfo.com/home.aspx), and online instructional materials (e.g., those available via https://www.youtube.com/user/nissanusa) that specifically teach and encourage customers and other end users to use the '023 Accused Products in an infringing manner, including by providing instructions on how to charge '023 Accused Products. By providing such instructions and support, Nissan knows (and has known), or should know (and should have known), that its actions have actively induced, and continue to actively induce, infringement of the '023 Patent.

***Damages***

111.    BHT has been damaged as a result of Nissan's infringing conduct described in this Count. Nissan is, thus, liable to BHT in an amount that adequately compensates it for Nissan's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

112.    Despite having knowledge of the '023 Patent and knowledge that it directly and/or indirectly infringes one or more claims of the '023 Patent, Nissan has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Nissan's infringing activities relative to the '023 Patent have, thus, been, and continue to be, willful, wanton, and deliberate in disregard of BHT's rights with respect to the '023 Patent, justifying enhanced damages under 35 U.S.C. § 284.

66

**CONCLUSION**

113.    BHT is entitled to recover from Nissan the damages sustained by BHT as a result of Nissan's wrongful acts and willful infringements in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

114.    BHT has incurred and will incur attorneys' fees, costs, and expenses in the prosecution of this action. The circumstances of this dispute may give rise to an exceptional case within the meaning of 35 U.S.C. § 285, and, in such case, BHT is entitled to recover its reasonable and necessary attorneys' fees, costs, and expenses.

**JURY DEMAND**

115.    BHT hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

**PRAYER FOR RELIEF**

116.    BHT respectfully requests that the Court find in its favor and against Nissan, and that the Court grant BHT the following relief:

(i)     Judgment that one or more claims of the Asserted Patents have been infringed, either literally and/or under the doctrine of equivalents, by Nissan;

(ii)    Judgment that one or more claims of the Asserted Patents have been willfully infringed, either literally and/or under the doctrine of equivalents, by Nissan;

(iii)   Judgment that Nissan account for and pay to BHT all damages and costs incurred by BHT because of Nissan's infringements and other conduct complained of herein, including an accounting for any sales or damages not presented at trial;

(iv)     Judgment that Nissan account for and pay to BHT a reasonable, ongoing, post-judgment royalty because of Nissan's infringements, including continuing infringing activities, and other conduct complained of herein;

(v)      Judgment that BHT be granted pre-judgment and post-judgment interest on the damages caused by Nissan's infringements and other conduct complained of herein;

(vi)     Judgment that this case is exceptional under the provisions of 35 U.S.C. § 285 and award enhanced damages; and

(vii)    Such other and further relief as the Court deems just and equitable.

Dated: March 20, 2026

Respectfully submitted,

*/s/ Patrick J. Conroy*
**Patrick J. Conroy**
Texas Bar No. 24012448
**Ryan P. Griffin**
Texas Bar No. 24053687
**T. William Kennedy Jr.**
Texas Bar No. 24055771
**Jonathan H. Rastegar**
Texas Bar No. 24064043
**Nathan L. Levenson**
Texas Bar No. 24097992
**Brandon G. Moore**
Texas Bar No. 24082372
**NELSON BUMGARDNER
CONROY PC**
2727 N. Harwood St., Suite 250
Dallas, TX 75201
pat@nelbum.com
ryan@nelbum.com
bill@nelbum.com
jon@nelbum.com
nathan@nelbum.com
brandon@nelbum.com

**Attorneys for Plaintiff Bunker Hill
Technologies, LLC**